

# Texas Department of Insurance

**Legal Services Division,** Mail Code 110-1A
333 Guadalupe • P. O. Box 149104, Austin, Texas 78714-9104
512-475-1821 telephone • www.tdi.state.tx.us

June 13, 2008

Underwriters @ Lloyds of London
Syndicate Nos. 1200, 1036,1183, & 2003
Dewey & LeBoeuf, LLP
125 West 55th Street
New York, New York 10019-5389

**Via Certified Mail**
**7005-0390-0000-8966-1073**
**Return Receipt Requested**

Re:   Cause No. 08-0604-337; *Lake Texoma Highport, LLC vs. Certain Underwriters at Lloyds of London, Syndicate Nos. 1036, 1183, 1200, & 2003, et al;* in the 336th Judicial District Court Grayson County, Texas

Greetings:

Enclosed please find **Plaintiff's Amended Petitions** in the above-referenced matter.  These documents were served upon the Commissioner of Insurance on **June 13, 2008.**

Sincerely,

Elizabeth Lara, Legal Assistant
Agency Counsel Section
Legal Services Division
(512) 463-6390

Encl.



EXHIBIT

B

CLERK OF THE COURT
**TRACY POWERS, DISTRICT CLERK**
**JUSTICE CENTER, 200 S. CROCKETT**
**SHERMAN, TEXAS 75090**

SPENCER F. SMITH
10TH FLOOR, TWO LEADERSHIP SQUARE
OKLAHOMA CITY, OKLAHOMA

CITATION

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

**SYNDICATE 1036-COI**

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's PLAINTIFF'S AMENDED PETITION at or before ten o'clock a.m. on the Monday after the expiration of twenty days after the date of service of this citation before the Honorable 336th District Court of Grayson County, Texas at the Justice Center of said County in Sherman, Texas. Said Plaintiff's Petition was filed in said court on the 9th day of May, 2008 this case numbered 08-0604-336 on the docket of said court, and styled:

**LAKE TEXOMA HIGHPORT, LLG, vs. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO INSURANCE AGREEMENT REPRESENTED BY POLICY NUMBER PPL070356; HOUSTOUN, WOODWARD, EASON, GENTLE, TOMFORDE AND ANDERSON, INC; D/B/A INSURANCE ALLIANCE**

The nature of the Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's PLAINTIFF'S AMENDED PETITION Petition accompanying this citation and make a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under hand and seal of said court at Sherman, Texas, this the 28th day of May, 2008.

Attest: **Tracy Powers**
**District Clerk, Grayson County, Texas**

By: _Kelly Kempler_
Deputy

08-0604-336
SYNDICATE 1036-COF

SHERIFF'S RETURN

Came to hand on _____day of_____, 2007, at
_____o'clock ____. And executed in _____
County, Texas by delivering to each of the within-named defendant(s), in
person, a true copy of this citation, having first endorsed thereon the date of delivery,
together with the accompanying true and correct copy of the Plaintiff's Petition, at
the following times and places, to-wit:

| NAME | Date Mth-Day-Yr | Time | Place, Course,  Dist from Court House |
|------|------------------|------|---------------------------------------|
|      |                  |      |                                       |
|      |                  |      |                                       |
|      |                  |      |                                       |

And not executed as to the defendant, _____the
diligence used in finding said defendant being _____and
the cause of failure to execute this process is:_____and
the information  received as to the whereabouts of the said defendant_____
_____.

Fees – Serving_____cop_____ $_____
                    Total      $_____

                              _____,County, Texas
                         By:_____,Deputy

No.  08-0604-336

| | | |
|---|---|---|
| LAKE TEXOMA HIGHPORT, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | OF GRAYSON COUNTY, TEXAS |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S | § | |
| OF LONDON, SYNDICATE 1036, | § | |
| SYNDICATE 1183, SYNDICATE 1200, and | § | |
| SYNDICATE 2003, subscribing to the | § | |
| insurance agreement represented by policy | § | |
| number PPL070356; and HOUSTOUN, | § | |
| WOODWARD, EASON, GENTLE, | § | |
| TOMFORDE AND ANDERSON, INC. d/b/a | § | |
| INSURANCE ALLIANCE | § | |
| | § | |
| Defendants. | § | 336 JUDICIAL DISTRICT |

## PLAINTIFF'S AMENDED PETITION

Plaintiff, Lake Texoma Highport, LLC ("Plaintiff" or "Highport"), for its claims against Defendants, Certain Underwriters at Lloyd's of London, Syndicate 1036, Syndicate 1183, Syndicate 1200, and Syndicate 2003 ("Lloyd's"), subscribing to the insurance agreement represented by policy number PPL070356, and Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance, (collectively, "Defendants"), alleges and states as follows:

### A. Discovery Control Plan

1.    Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190 and affirmatively pleads that it seeks monetary relief aggregating more than $50,000.00.

### B. Parties

2.    Plaintiff is a Texas LLC doing business in the State of Texas.

FILED FOR RECORD

2008 MAY 19  PM12: 0

3.    Defendant, Lloyd's, is comprised of London, England business entities doing business in the State of Texas, which may be served with process through the Texas Commissioner of Insurance.

4.    Defendant, Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance ("Insurance Alliance") is a Texas business entity having its principal place of business in the State of Texas, and may be served with process through its registered agent.

### C. Jurisdiction and Venue

5.    Jurisdiction and venue are permissive in this county because this is the county in which all or a substantial part of the assets, events or omissions giving rise to the claim occurred.

### D. Factual Background

6.    Lloyd's of London is a market comprised of insurance syndicates in which underwriting members of Lloyd's (known as "Names" or "Syndicates") agree to indemnify their insureds, such as the Plaintiff in this case.

7.    Plaintiff owns a marina on the southern shore of Lake Texoma in Grayson County, Texas (the "Marina"). The Marina consists of land, a restaurant, a club, multiple docks, a bulkhead, and a long list of other property normally associated with marinas.

8.    In early 2005, and in early 2006, Plaintiff instructed Insurance Alliance, which was acting as its insurance agent, to locate a property insurance policy that would provide Plaintiff with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for loss of business ("Business Interruption"). Insurance Alliance represented to Plaintiff that the policy purchased by Plaintiff in the spring of 2005, and the policy purchased by Plaintiff in the spring of 2006, provided the requested blanket coverage.

9.    In early 2007, Plaintiff instructed Insurance Alliance to find a policy with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for Business Interruption. In response to Plaintiff's request, Insurance Alliance provided Plaintiff with, and Plaintiff purchased from Lloyd's a property insurance

3266701_4.DOC

agreement, represented by policy number PPL070356 (the "Policy"), which was to provide Plaintiff with blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to, the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, and Business Interruption.

10.     Insurance Alliance represented to Plaintiff that the Policy provided blanket coverage for all of Plaintiff's real and personal property associated with the Marina.

11.     Plaintiff paid premiums to Lloyd's for the Policy under the belief that the Policy provided blanket coverage.

12.     After purchasing the Policy, Plaintiff suffered significant damage to the Marina due to flooding from heavy rainfall occurring from May through July of 2007.

13.     Plaintiff retained Adjustors International ("AI") to assist it in adjusting the claim and documenting the losses sustained as a result of the flooding, and Lloyd's retained Charles Taylor Consulting ("CTC") to act as Lloyd's agent in connection with the adjustment of Plaintiff's claims.

14.     In August 2007, Plaintiff, AI, and CTC met numerous times to determine the most efficient and appropriate manner to evaluate Plaintiff's claims. The parties agreed that AI would document and submit the amount of the claims to CTC, which would respond to the documented claims by either agreeing to the submitted amounts or providing items of disagreement to be reviewed and discussed by the parties.

15.     In October and November 2007, AI submitted estimates for the cost of repairing or replacing some of Plaintiff's wet and dry property that had been damaged by the flooding to CTC. The total amount of the estimates submitted by AI was $8,391,598.48. CTC agreed to review the estimates, list any disputed items, and meet with AI to discuss them.

16.     On December 4, 2007, representatives of CTC and AI met at Highport Marina. At this meeting, CTC failed to provide a list of any estimates submitted by AI with which CTC

either agreed or disputed. CTC indicated, however, that there may be some issues regarding the coverage under the Policy.

17. On December 4, 2007, AI submitted a sworn partial proof of loss on behalf of Plaintiff for $8,291,598.48 (the "Proof of Loss") for some of the damaged dry and wet property.

18. By letter dated December 20, 2007, Chris Moss with CTC acknowledged receipt of the Proof of Loss but represented that Lloyd's could not make a decision "as to how much of this claim is covered until we have received all items, statements, and forms necessary to evaluate this matter", including (i) competitive bids for the repair work, (ii) expert reports, and (iii) a valuation survey showing the replacement value of the damaged property. The Policy, however, does not require Plaintiff to provide any such documents, and Plaintiff notified CTC in a December 21, 2007 letter that if CTC or Lloyd's needs them, they are the "responsibility of the carrier or agent/adjustor for the carrier."

19. Neither Lloyd's nor CTC has provided AI or Plaintiff with a list of the estimates submitted by AI with which it either agrees or disagrees. In addition, until counsel for Plaintiff received an April 9, 2008 letter from Lloyd's counsel, neither Lloyd's nor CTC had provided AI or Plaintiff with its final coverage position in response to the Proof of Loss.

20. The April 9, 2008 letter, however, sets forth Lloyd's coverage position (the "Coverage Letter"), and disputes that the Policy provides blanket coverage for all of Plaintiff's real and personal property associated with the Marina. Specifically, Lloyd's takes the position that one of the schedules ("Underwriting Schedule") submitted as part of the underwriting for the Policy by Insurance Alliance ("Underwriting Submission") not only formed a part of the contract of insurance, but also limited coverage as follows: (i) the values on the Underwriting Schedule constitute sub-limits for each asset listed; (ii) only the assets listed on the Underwriting Schedule are insured; (iii) there is no Business Interruption for assets not identified on the Underwriting Schedule as being associated with business interruption; and (iv) a co-insurance penalty is calculated based on the individual values listed on the Underwriting Schedule.

21.   Thus, in an attempt to limit coverage, Lloyd's has indicated that because the Marina's bulkhead was not listed on Underwriting Schedule, it is not covered under the Policy even though the Docks & Piers Wording section of the Policy provides that the insured property includes "[f]loating and/or fixed piers, floating and/or fixed docks, [and] **bulkheads**" (emphasis added).  Plaintiff estimates that the current damage to the bulkhead exceeds $1,000,000.

22.   In connection with the dry property, Lloyd's has taken the position that the itemized values set forth on the Underwriting Schedule, instead of the $4,075,000 coverage amount for the dry property set forth in the schedule attached to the slip (the "Slip Schedule"), should be relied upon to determine the amount of the co-insurance penalty that might be due.  By taking this position, Lloyd's significantly reduces its liability under the Policy.

23.   Regarding Business Interruption coverage, Lloyd's relies upon the Underwriting Schedule to support its position that there is no coverage for any "dry" assets other than the Administration Building because the schedule does not associate a business interruption value with any "dry" asset except the Administration Building.  This interpretation is inconsistent with the coverage provided under the Business Interruption Wording Section of the contract of insurance and the Slip Schedule and significantly reduces Lloyd's liability under the Policy.

### E. Count 1 – Breach of Contract (Lloyd's)

24.   Paragraphs 1-23 above are incorporated herein.

25.   Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for, among other things, all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

26.   Lloyd's breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood and by failing to properly adjust Plaintiff's claims as required under the Policy.

27.   As a direct and proximate cause of Lloyds' actions, Plaintiff has been damaged in excess of $8,000,000.

3266701_4.DOC

### F. Count II – Declaratory Judgment (Lloyd's)

28.     Paragraphs 1-27 above are incorporate herein.

29.     Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

30.     Lloyd's has taken the coverage position that it is not obligated to provide blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

31.     Plaintiff seeks a declaration from the Court that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance.

### G. Count III – Breach of Contract (Insurance Alliance)

32.     Paragraphs 1-31 above are incorporated herein.

33.     Plaintiff and Insurance Alliance entered into a contract pursuant to which Insurance Alliance agreed to acquire for Plaintiff a property insurance policy that provided Plaintiff with $15,000,000 blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to,

the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, contents, equipment and loss of business income.

34.    If Lloyd's coverage position is correct, Insurance Alliance breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood.

35.    If Lloyd's coverage position is correct, as a direct and proximate cause of Insurance Alliance's actions, Plaintiff has suffered economic losses.

### H.  Count IV – Negligence (Insurance Alliance)

36.    Paragraphs 1-35 above are incorporated herein.

37.    As Plaintiff's agent, Insurance Alliance owed a legal duty to Plaintiff to use ordinary care in obtaining property insurance coverage for Plaintiff.

38.    If Lloyd's coverage position is correct, Insurance Alliance breached its duty to Plaintiff by not using ordinary care in obtaining property insurance coverage for Plaintiff.

39.    If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent conduct, Plaintiff has suffered economic losses.

### I.  Count V – Negligent Misrepresentation (Insurance Alliance)

40.    Paragraphs 1-39 above are incorporated herein.

41.    If Lloyd's coverage position is correct, while acting as Plaintiff's agent, Insurance Alliance made representations to Plaintiff regarding the Policy for Plaintiff's benefit that included false information.

42.    If Lloyd's coverage position is correct, Insurance Alliance did not exercise reasonable care or competence in obtaining or communicating the information in the representations.

43.    Plaintiff justifiably relied on the representations.

44.    If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent misrepresentations, Plaintiff has suffered economic losses.

### J.  Count VI– Common-Law Fraud (Insurance Alliance)

45.    Paragraphs 1-44 above are incorporated herein.

3266701_4.DOC

46.    If Lloyd's coverage position is correct, as Plaintiff's agent, Insurance Alliance made material representations to Plaintiff which were false.

47.    When Insurance Alliance made the false representations, it did so recklessly, as positive assertions, and without knowledge of their truth.

48.    Insurance Alliance intended Plaintiff to act on its representations, and Plaintiff did in fact rely upon and act on the false representations.

49.    If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's fraudulent conduct, Plaintiff has suffered economic losses.

### I. Conditions Precedent

50.    All conditions precedent have been performed or have occurred.

### J. Jury Demand

51.    Plaintiff hereby requests a trial by jury.

### K. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Court enter (1) an order declaring that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance, and (2) a judgment against Defendants as follows:

A.    for damages in an amount to be proven at trial;

B.    for pre- and post-judgment;

C.     for costs and attorney fees; and

D.     for such further relief as Plaintiff is now or may become entitled in law or equity.

Respectfully submitted this _____ day of _____, 2008,

By: _____

Spencer F. Smith
Texas Bar No. 24008625
McAfee & Taft PC
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma
Telephone (405) 552-2334
Facsimile (405) 228-7334

ATTORNEYS FOR PLAINTIFF

9

3266701_4.DOC

CLERK OF THE COURT
**TRACY POWERS, DISTRICT CLERK**
**JUSTICE CENTER, 200 S. CROCKETT**
**SHERMAN, TEXAS 75090**

SPENCER F. SMITH
10TH FLOOR, TWO LEADERSHIP SQUARE
OKLAHOMA CITY, OKLAHOMA

CITATION

NOTICE TO DEFENDANT:  You  have been sued.  You may employ an attorney.  If you or your attorney
do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next
following the expiration of twenty days after you were served this citation and petition, a default judgment
may be taken against you.

**SYNDICATE 1183-TAL**

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's PLAINTIFF'S
AMENDED PETITION at or before ten o'clock a.m. on the Monday after the expiration of twenty days
after the date of service of this citation before the Honorable 336th District Court of Grayson County,
Texas at the Justice Center of said County in Sherman, Texas, said Plaintiff's Petition was filed in said
court on the 19th day of May, 2008 this case, numbered 08-0604-336 on the docket of said court and
styled:

**LAKE TEXOMA HIGHPORT, LLC, vs. CERTAIN UNDERWRITERS AT LLOYD'S OF**
**LONDON SUBSCRIBING TO INSURANCE AGREEMENT REPRESENTED BY POLICY**
**NUMBER PPL070356; HOUSTOUN, WOODWARD, EASON, GENTLE, TOMFORDE AND**
**ANDERSON, INC. D/B/A INSURANCE ALLIANCE**

The nature of  the Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's
PLAINTIFF'S AMENDED PETITION  Petition accompanying this citation and make a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the
mandates thereof, and make due return as the law directs.

Issued and given under hand and seal of said court at Sherman, Texas, this the 28th day of May, 2008.

Attest:  **Tracy Powers**
**District Clerk, Grayson County, Texas**

By: _____
Deputy

08-0604-336
SYNDICATE 1183-TAL

SHERIFF'S RETURN

Came to hand on _____day of_____, 2007, at
_____o'clock _____. And executed in _____
County, Texas by delivering to each of the within-named defendant(s), in
person, a true copy of this citation, having first endorsed thereon the date of delivery,
together with the accompanying true and correct copy of the Plaintiff's Petition, at
the following times and places, to-wit:

| NAME | Date Mth-Day-Yr | Time | Place, Course,  Dist from Court House |
|------|------------------|------|----------------------------------------|
|      |                  |      |                                        |
|      |                  |      |                                        |
|      |                  |      |                                        |

And not executed as to the defendant, _____the
diligence used in finding said defendant being _____and
the cause of failure to execute this process is:_____and
the information  received as to the whereabouts of the said defendant_____
_____.

Fees – Serving_____cop_____ $_____
                              Total      $_____

                              _____,County, Texas
                         By:_____,Deputy

No. 08-0604-336

| | | |
|---|---|---|
| LAKE TEXOMA HIGHPORT, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | OF GRAYSON COUNTY, TEXAS |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S | § | |
| OF LONDON, SYNDICATE 1036, | § | |
| SYNDICATE 1183, SYNDICATE 1200, and | § | |
| SYNDICATE 2003, subscribing to the | § | |
| insurance agreement represented by policy | § | |
| number PPL070356; and HOUSTOUN, | § | |
| WOODWARD, EASON, GENTLE, | § | |
| TOMFORDE AND ANDERSON, INC. d/b/a | § | |
| INSURANCE ALLIANCE | § | |
| | § | |
| Defendants. | § | 336 JUDICIAL DISTRICT |

## PLAINTIFF'S AMENDED PETITION

Plaintiff, Lake Texoma Highport, LLC ("Plaintiff" or "Highport"), for its claims against Defendants, Certain Underwriters at Lloyd's of London, Syndicate 1036, Syndicate 1183, Syndicate 1200, and Syndicate 2003 ("Lloyd's"), subscribing to the insurance agreement represented by policy number PPL070356, and Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance, (collectively, "Defendants"), alleges and states as follows:

### A. Discovery Control Plan

1.     Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190 and affirmatively pleads that it seeks monetary relief aggregating more than $50,000.00.

### B. Parties

2.     Plaintiff is a Texas LLC doing business in the State of Texas.

FILED FOR RECORD

2008 MAY 19  PM 12: 01

3266701_4.DOC

3.    Defendant, Lloyd's, is comprised of London, England business entities doing business in the State of Texas, which may be served with process through the Texas Commissioner of Insurance.

4.    Defendant, Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance ("Insurance Alliance") is a Texas business entity having its principal place of business in the State of Texas, and may be served with process through its registered agent.

### C. Jurisdiction and Venue

5.    Jurisdiction and venue are permissive in this county because this is the county in which all or a substantial part of the assets, events or omissions giving rise to the claim occurred.

### D. Factual Background

6.    Lloyd's of London is a market comprised of insurance syndicates in which underwriting members of Lloyd's (known as "Names" or "Syndicates") agree to indemnify their insureds, such as the Plaintiff in this case.

7.    Plaintiff owns a marina on the southern shore of Lake Texoma in Grayson County, Texas (the "Marina"). The Marina consists of land, a restaurant, a club, multiple docks, a bulkhead, and a long list of other property normally associated with marinas.

8.    In early 2005, and in early 2006, Plaintiff instructed Insurance Alliance, which was acting as its insurance agent, to locate a property insurance policy that would provide Plaintiff with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for loss of business ("Business Interruption"). Insurance Alliance represented to Plaintiff that the policy purchased by Plaintiff in the spring of 2005, and the policy purchased by Plaintiff in the spring of 2006, provided the requested blanket coverage.

9.    In early 2007, Plaintiff instructed Insurance Alliance to find a policy with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for Business Interruption. In response to Plaintiff's request, Insurance Alliance provided Plaintiff with, and Plaintiff purchased from Lloyd's a property insurance

2

agreement, represented by policy number PPL070356 (the "Policy"), which was to provide Plaintiff with blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to, the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, and Business Interruption.

10.    Insurance Alliance represented to Plaintiff that the Policy provided blanket coverage for all of Plaintiff's real and personal property associated with the Marina.

11.    Plaintiff paid premiums to Lloyd's for the Policy under the belief that the Policy provided blanket coverage.

12.    After purchasing the Policy, Plaintiff suffered significant damage to the Marina due to flooding from heavy rainfall occurring from May through July of 2007.

13.    Plaintiff retained Adjustors International ("AI") to assist it in adjusting the claim and documenting the losses sustained as a result of the flooding, and Lloyd's retained Charles Taylor Consulting ("CTC") to act as Lloyd's agent in connection with the adjustment of Plaintiff's claims.

14.    In August 2007, Plaintiff, AI, and CTC met numerous times to determine the most efficient and appropriate manner to evaluate Plaintiff's claims.  The parties agreed that AI would document and submit the amount of the claims to CTC, which would respond to the documented claims by either agreeing to the submitted amounts or providing items of disagreement to be reviewed and discussed by the parties.

15.    In October and November 2007, AI submitted estimates for the cost of repairing or replacing some of Plaintiff's wet and dry property that had been damaged by the flooding to CTC.  The total amount of the estimates submitted by AI was $8,391,598.48.  CTC agreed to review the estimates, list any disputed items, and meet with AI to discuss them.

16.    On December 4, 2007, representatives of CTC and AI met at Highport Marina. At this meeting, CTC failed to provide a list of any estimates submitted by AI with which CTC

either agreed or disputed.  CTC indicated, however, that there may be some issues regarding the coverage under the Policy.

17.     On December 4, 2007, AI submitted a sworn partial proof of loss on behalf of Plaintiff for $8,291,598.48 (the "Proof of Loss") for some of the damaged dry and wet property.

18.     By letter dated December 20, 2007, Chris Moss with CTC acknowledged receipt of the Proof of Loss but represented that Lloyd's could not make a decision "as to how much of this claim is covered until we have received all items, statements, and forms necessary to evaluate this matter", including (i) competitive bids for the repair work, (ii) expert reports, and (iii) a valuation survey showing the replacement value of the damaged property.  The Policy, however, does not require Plaintiff to provide any such documents, and Plaintiff notified CTC in a December 21, 2007 letter that if CTC or Lloyd's needs them, they are the "responsibility of the carrier or agent/adjustor for the carrier."

19.     Neither Lloyd's nor CTC has provided AI or Plaintiff with a list of the estimates submitted by AI with which it either agrees or disagrees.  In addition, until counsel for Plaintiff received an April 9, 2008 letter from Lloyd's counsel, neither Lloyd's nor CTC had provided AI or Plaintiff with its final coverage position in response to the Proof of Loss.

20.     The April 9, 2008 letter, however, sets forth Lloyd's coverage position (the "Coverage Letter"), and disputes that the Policy provides blanket coverage for all of Plaintiff's real and personal property associated with the Marina.  Specifically, Lloyd's takes the position that one of the schedules ("Underwriting Schedule") submitted as part of the underwriting for the Policy by Insurance Alliance ("Underwriting Submission") not only formed a part of the contract of insurance, but also limited coverage as follows: (i) the values on the Underwriting Schedule constitute sub-limits for each asset listed; (ii) only the assets listed on the Underwriting Schedule are insured; (iii) there is no Business Interruption for assets not identified on the Underwriting Schedule as being associated with business interruption; and (iv) a co-insurance penalty is calculated based on the individual values listed on the Underwriting Schedule.

4

21.    Thus, in an attempt to limit coverage, Lloyd's has indicated that because the Marina's bulkhead was not listed on Underwriting Schedule, it is not covered under the Policy even though the Docks & Piers Wording section of the Policy provides that the insured property includes "[f]loating and/or fixed piers, floating and/or fixed docks, [and] **bulkheads**" (emphasis added).  Plaintiff estimates that the current damage to the bulkhead exceeds $1,000,000.

22.    In connection with the dry property, Lloyd's has taken the position that the itemized values set forth on the Underwriting Schedule, instead of the $4,075,000 coverage amount for the dry property set forth in the schedule attached to the slip (the "Slip Schedule"), should be relied upon to determine the amount of the co-insurance penalty that might be due.  By taking this position, Lloyd's significantly reduces its liability under the Policy.

23.    Regarding Business Interruption coverage, Lloyd's relies upon the Underwriting Schedule to support its position that there is no coverage for any "dry" assets other than the Administration Building because the schedule does not associate a business interruption value with any "dry" asset except the Administration Building.  This interpretation is inconsistent with the coverage provided under the Business Interruption Wording Section of the contract of insurance and the Slip Schedule and significantly reduces Lloyd's liability under the Policy.

### E. Count 1 – Breach of Contract (Lloyd's)

24.    Paragraphs 1-23 above are incorporated herein.

25.    Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for, among other things, all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

26.    Lloyd's breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood and by failing to properly adjust Plaintiff's claims as required under the Policy.

27.    As a direct and proximate cause of Lloyds' actions, Plaintiff has been damaged in excess of $8,000,000.

3266701_4.DOC

## F. Count II – Declaratory Judgment (Lloyd's)

28.     Paragraphs 1-27 above are incorporate herein.

29.     Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

30.     Lloyd's has taken the coverage position that it is not obligated to provide blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

31.     Plaintiff seeks a declaration from the Court that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance.

## G. Count III – Breach of Contract (Insurance Alliance)

32.     Paragraphs 1-31 above are incorporated herein.

33.     Plaintiff and Insurance Alliance entered into a contract pursuant to which Insurance Alliance agreed to acquire for Plaintiff a property insurance policy that provided Plaintiff with $15,000,000 blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to,

the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, contents, equipment and loss of business income.

34.     If Lloyd's coverage position is correct, Insurance Alliance breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood.

35.     If Lloyd's coverage position is correct, as a direct and proximate cause of Insurance Alliance's actions, Plaintiff has suffered economic losses.

### H.  Count IV – Negligence (Insurance Alliance)

36.     Paragraphs 1-35 above are incorporated herein.

37.     As Plaintiff's agent, Insurance Alliance owed a legal duty to Plaintiff to use ordinary care in obtaining property insurance coverage for Plaintiff.

38.     If Lloyd's coverage position is correct, Insurance Alliance breached its duty to Plaintiff by not using ordinary care in obtaining property insurance coverage for Plaintiff.

39.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent conduct, Plaintiff has suffered economic losses.

### I.  Count V – Negligent Misrepresentation (Insurance Alliance)

40.     Paragraphs 1-39 above are incorporated herein.

41.     If Lloyd's coverage position is correct, while acting as Plaintiff's agent, Insurance Alliance made representations to Plaintiff regarding the Policy for Plaintiff's benefit that included false information.

42.     If Lloyd's coverage position is correct, Insurance Alliance did not exercise reasonable care or competence in obtaining or communicating the information in the representations.

43.     Plaintiff justifiably relied on the representations.

44.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent misrepresentations, Plaintiff has suffered economic losses.

### J.  Count VI– Common-Law Fraud (Insurance Alliance)

45.     Paragraphs 1-44 above are incorporated herein.

7

46.     If Lloyd's coverage position is correct, as Plaintiff's agent, Insurance Alliance made material representations to Plaintiff which were false.

47.     When Insurance Alliance made the false representations, it did so recklessly, as positive assertions, and without knowledge of their truth.

48.     Insurance Alliance intended Plaintiff to act on its representations, and Plaintiff did in fact rely upon and act on the false representations.

49.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's fraudulent conduct, Plaintiff has suffered economic losses.

### I. Conditions Precedent

50.     All conditions precedent have been performed or have occurred.

### J. Jury Demand

51.     Plaintiff hereby requests a trial by jury.

### K. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Court enter (1) an order declaring that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance, and (2) a judgment against Defendants as follows:

     A.     for damages in an amount to be proven at trial;

     B.     for pre- and post-judgment;

C.   for costs and attorney fees; and

D.   for such further relief as Plaintiff is now or may become entitled in law or equity.

Respectfully submitted this _14th_ day of _May_, 2008,

By: _____

Spencer F. Smith
Texas Bar No. 24008625
McAfee & Taft PC
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma
Telephone (405) 552-2334
Facsimile (405) 228-7334

ATTORNEYS FOR PLAINTIFF

CLERK OF THE COURT
**TRACY POWERS, DISTRICT CLERK**
**JUSTICE CENTER, 200 S. CROCKETT**
**SHERMAN, TEXAS 75090**

SPENCER F. SMITH
10TH FLOOR, TWO LEADERSHIP SQUARE
OKLAHOMA CITY, OKLAHOMA

CITATION

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

**SYNDICATE 1200-HMA**

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's PLAINTIFF'S AMENDED PETITION at or before ten o'clock a.m. on the Monday after the expiration of twenty days after the date of service of this citation before the Honorable 336th District Court of Grayson County, Texas at the Justice Center of said County in Sherman, Texas.  Said Plaintiff's Petition was filed in said court on the 19th day of May, 2008  this case numbered 08-0604-336 on the docket of said court, and styled:

**LAKE TEXOMA HIGHPORT, LLC, vs. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO INSURANCE AGREEMENT REPRESENTED BY POLICY NUMBER PPL070356; HOUSTOUN, WOODWARD, EASON, GENTLE, TOMFORDE, AND ANDERSON, INC. D/B/A INSURANCE ALLIANCE**

The nature of the Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's PLAINTIFF'S AMENDED PETITION  Petition accompanying this citation and make a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under hand and seal of said court at Sherman, Texas, this the 28th day of May, 2008.

Attest:  Tracy Powers
District Clerk, Grayson County, Texas

By: _____
     Deputy

08-0604-336
SYNDICATE 1200-HMA

SHERIFF'S RETURN

Came to hand on _____day of_____, 2007, at
_____o'clock ____. And executed in _____
County, Texas by delivering to each of the within-named defendant(s), in
person, a true copy of this citation, having first endorsed thereon the date of delivery,
together with the accompanying true and correct copy of the Plaintiff's Petition, at
the following times and places, to-wit:

| NAME | Date Mth-Day-Yr | Time | Place, Course,  Dist from Court House |
|------|-----------------|------|---------------------------------------|
|      |                 |      |                                       |
|      |                 |      |                                       |
|      |                 |      |                                       |
|      |                 |      |                                       |

And not executed as to the defendant, _____the
diligence used in finding said defendant being _____and
the cause of failure to execute this process is:_____and
the information  received as to the whereabouts of the said defendant_____
_____.

Fees – Serving_____cop_____$_____
                Total      $_____

_____,County, Texas
By:_____,Deputy

No.  08-0604-336

| | | |
|---|---|---|
| LAKE TEXOMA HIGHPORT, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | OF GRAYSON COUNTY, TEXAS |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S | § | |
| OF LONDON, SYNDICATE 1036, | § | |
| SYNDICATE 1183, SYNDICATE 1200, and | § | |
| SYNDICATE 2003, subscribing to the | § | |
| insurance agreement represented by policy | § | |
| number PPL070356; and HOUSTOUN, | § | |
| WOODWARD, EASON, GENTLE, | § | |
| TOMFORDE AND ANDERSON, INC. d/b/a | § | |
| INSURANCE ALLIANCE | § | |
| | § | |
| Defendants. | § | 336 JUDICIAL DISTRICT |

## PLAINTIFF'S AMENDED PETITION

Plaintiff, Lake Texoma Highport, LLC ("Plaintiff" or "Highport"), for its claims against Defendants, Certain Underwriters at Lloyd's of London, Syndicate 1036, Syndicate 1183, Syndicate 1200, and Syndicate 2003 ("Lloyd's"), subscribing to the insurance agreement represented by policy number PPL070356, and Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance, (collectively, "Defendants"), alleges and states as follows:

### A. Discovery Control Plan

1.     Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190 and affirmatively pleads that it seeks monetary relief aggregating more than $50,000.00.

### B. Parties

2.     Plaintiff is a Texas LLC doing business in the State of Texas.

FILED FOR RECORD
2008 MAY 19  PM 12: 01

3.     Defendant, Lloyd's, is comprised of London, England business entities doing business in the State of Texas, which may be served with process through the Texas Commissioner of Insurance.

4.     Defendant, Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance ("Insurance Alliance") is a Texas business entity having its principal place of business in the State of Texas, and may be served with process through its registered agent.

### C. Jurisdiction and Venue

5.     Jurisdiction and venue are permissive in this county because this is the county in which all or a substantial part of the assets, events or omissions giving rise to the claim occurred.

### D. Factual Background

6.     Lloyd's of London is a market comprised of insurance syndicates in which underwriting members of Lloyd's (known as "Names" or "Syndicates") agree to indemnify their insureds, such as the Plaintiff in this case.

7.     Plaintiff owns a marina on the southern shore of Lake Texoma in Grayson County, Texas (the "Marina"). The Marina consists of land, a restaurant, a club, multiple docks, a bulkhead, and a long list of other property normally associated with marinas.

8.     In early 2005, and in early 2006, Plaintiff instructed Insurance Alliance, which was acting as its insurance agent, to locate a property insurance policy that would provide Plaintiff with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for loss of business ("Business Interruption"). Insurance Alliance represented to Plaintiff that the policy purchased by Plaintiff in the spring of 2005, and the policy purchased by Plaintiff in the spring of 2006, provided the requested blanket coverage.

9.     In early 2007, Plaintiff instructed Insurance Alliance to find a policy with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for Business Interruption.  In response to Plaintiff's request, Insurance Alliance provided Plaintiff with, and Plaintiff purchased from Lloyd's a property insurance

2

agreement, represented by policy number PPL070356 (the "Policy"), which was to provide Plaintiff with blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to, the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, and Business Interruption.

10.      Insurance Alliance represented to Plaintiff that the Policy provided blanket coverage for all of Plaintiff's real and personal property associated with the Marina.

11.      Plaintiff paid premiums to Lloyd's for the Policy under the belief that the Policy provided blanket coverage.

12.      After purchasing the Policy, Plaintiff suffered significant damage to the Marina due to flooding from heavy rainfall occurring from May through July of 2007.

13.      Plaintiff retained Adjustors International ("AI") to assist it in adjusting the claim and documenting the losses sustained as a result of the flooding, and Lloyd's retained Charles Taylor Consulting ("CTC") to act as Lloyd's agent in connection with the adjustment of Plaintiff's claims.

14.      In August 2007, Plaintiff, AI, and CTC met numerous times to determine the most efficient and appropriate manner to evaluate Plaintiff's claims.  The parties agreed that AI would document and submit the amount of the claims to CTC, which would respond to the documented claims by either agreeing to the submitted amounts or providing items of disagreement to be reviewed and discussed by the parties.

15.      In October and November 2007, AI submitted estimates for the cost of repairing or replacing some of Plaintiff's wet and dry property that had been damaged by the flooding to CTC.  The total amount of the estimates submitted by AI was $8,391,598.48.  CTC agreed to review the estimates, list any disputed items, and meet with AI to discuss them.

16.      On December 4, 2007, representatives of CTC and AI met at Highport Marina. At this meeting, CTC failed to provide a list of any estimates submitted by AI with which CTC

either agreed or disputed.  CTC indicated, however, that there may be some issues regarding the coverage under the Policy.

17.     On December 4, 2007, AI submitted a sworn partial proof of loss on behalf of Plaintiff for $8,291,598.48 (the "Proof of Loss") for some of the damaged dry and wet property.

18.     By letter dated December 20, 2007, Chris Moss with CTC acknowledged receipt of the Proof of Loss but represented that Lloyd's could not make a decision "as to how much of this claim is covered until we have received all items, statements, and forms necessary to evaluate this matter", including (i) competitive bids for the repair work, (ii) expert reports, and (iii) a valuation survey showing the replacement value of the damaged property.  The Policy, however, does not require Plaintiff to provide any such documents, and Plaintiff notified CTC in a December 21, 2007 letter that if CTC or Lloyd's needs them, they are the "responsibility of the carrier or agent/adjustor for the carrier."

19.     Neither Lloyd's nor CTC has provided AI or Plaintiff with a list of the estimates submitted by AI with which it either agrees or disagrees.  In addition, until counsel for Plaintiff received an April 9, 2008 letter from Lloyd's counsel, neither Lloyd's nor CTC had provided AI or Plaintiff with its final coverage position in response to the Proof of Loss.

20.     The April 9, 2008 letter, however, sets forth Lloyd's coverage position (the "Coverage Letter"), and disputes that the Policy provides blanket coverage for all of Plaintiff's real and personal property associated with the Marina.  Specifically, Lloyd's takes the position that one of the schedules ("Underwriting Schedule") submitted as part of the underwriting for the Policy by Insurance Alliance ("Underwriting Submission") not only formed a part of the contract of insurance, but also limited coverage as follows: (i) the values on the Underwriting Schedule constitute sub-limits for each asset listed; (ii) only the assets listed on the Underwriting Schedule are insured; (iii) there is no Business Interruption for assets not identified on the Underwriting Schedule as being associated with business interruption; and (iv) a co-insurance penalty is calculated based on the individual values listed on the Underwriting Schedule.

21.     Thus, in an attempt to limit coverage, Lloyd's has indicated that because the Marina's bulkhead was not listed on Underwriting Schedule, it is not covered under the Policy even though the Docks & Piers Wording section of the Policy provides that the insured property includes "[f]loating and/or fixed piers, floating and/or fixed docks, [and] **bulkheads**" (emphasis added).  Plaintiff estimates that the current damage to the bulkhead exceeds $1,000,000.

22.     In connection with the dry property, Lloyd's has taken the position that the itemized values set forth on the Underwriting Schedule, instead of the $4,075,000 coverage amount for the dry property set forth in the schedule attached to the slip (the "Slip Schedule"), should be relied upon to determine the amount of the co-insurance penalty that might be due.  By taking this position, Lloyd's significantly reduces its liability under the Policy.

23.     Regarding Business Interruption coverage, Lloyd's relies upon the Underwriting Schedule to support its position that there is no coverage for any "dry" assets other than the Administration Building because the schedule does not associate a business interruption value with any "dry" asset except the Administration Building.  This interpretation is inconsistent with the coverage provided under the Business Interruption Wording Section of the contract of insurance and the Slip Schedule and significantly reduces Lloyd's liability under the Policy.

### E. Count 1 – Breach of Contract (Lloyd's)

24.     Paragraphs 1-23 above are incorporated herein.

25.     Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for, among other things, all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

26.     Lloyd's breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood and by failing to properly adjust Plaintiff's claims as required under the Policy.

27.     As a direct and proximate cause of Lloyds' actions, Plaintiff has been damaged in excess of $8,000,000.

3266701_4.DOC

### F. Count II – Declaratory Judgment (Lloyd's)

28.     Paragraphs 1-27 above are incorporate herein.

29.     Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

30.     Lloyd's has taken the coverage position that it is not obligated to provide blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

31.     Plaintiff seeks a declaration from the Court that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance.

### G. Count III – Breach of Contract (Insurance Alliance)

32.     Paragraphs 1-31 above are incorporated herein.

33.     Plaintiff and Insurance Alliance entered into a contract pursuant to which Insurance Alliance agreed to acquire for Plaintiff a property insurance policy that provided Plaintiff with $15,000,000 blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to,

the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, contents, equipment and loss of business income.

34.     If Lloyd's coverage position is correct, Insurance Alliance breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood.

35.     If Lloyd's coverage position is correct, as a direct and proximate cause of Insurance Alliance's actions, Plaintiff has suffered economic losses.

### H. Count IV – Negligence (Insurance Alliance)

36.     Paragraphs 1-35 above are incorporated herein.

37.     As Plaintiff's agent, Insurance Alliance owed a legal duty to Plaintiff to use ordinary care in obtaining property insurance coverage for Plaintiff.

38.     If Lloyd's coverage position is correct, Insurance Alliance breached its duty to Plaintiff by not using ordinary care in obtaining property insurance coverage for Plaintiff.

39.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent conduct, Plaintiff has suffered economic losses.

### I. Count V – Negligent Misrepresentation (Insurance Alliance)

40.     Paragraphs 1-39 above are incorporated herein.

41.     If Lloyd's coverage position is correct, while acting as Plaintiff's agent, Insurance Alliance made representations to Plaintiff regarding the Policy for Plaintiff's benefit that included false information.

42.     If Lloyd's coverage position is correct, Insurance Alliance did not exercise reasonable care or competence in obtaining or communicating the information in the representations.

43.     Plaintiff justifiably relied on the representations.

44.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent misrepresentations, Plaintiff has suffered economic losses.

### J. Count VI– Common-Law Fraud (Insurance Alliance)

45.     Paragraphs 1-44 above are incorporated herein.

7

46.     If Lloyd's coverage position is correct, as Plaintiff's agent, Insurance Alliance made material representations to Plaintiff which were false.

47.     When Insurance Alliance made the false representations, it did so recklessly, as positive assertions, and without knowledge of their truth.

48.     Insurance Alliance intended Plaintiff to act on its representations, and Plaintiff did in fact rely upon and act on the false representations.

49.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's fraudulent conduct, Plaintiff has suffered economic losses.

### I. Conditions Precedent

50.     All conditions precedent have been performed or have occurred.

### J. Jury Demand

51.     Plaintiff hereby requests a trial by jury.

### K. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Court enter (1) an order declaring that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance, and (2) a judgment against Defendants as follows:

A.      for damages in an amount to be proven at trial;

B.      for pre- and post-judgment;

C.    for costs and attorney fees; and

D.    for such further relief as Plaintiff is now or may become entitled in law or equity.


Respectfully submitted this _____ day of _____, 2008,

By: _____

Spencer F. Smith
Texas Bar No. 24008625
McAfee & Taft PC
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma
Telephone (405) 552-2334
Facsimile (405) 228-7334

ATTORNEYS FOR PLAINTIFF

CLERK OF THE COURT                          SPENCER F. SMITH
**TRACY POWERS, DISTRICT CLERK**            10TH FLOOR, TWO LEADERSHIP SQUARE
**JUSTICE CENTER, 200 S. CROCKETT**         OKLAHOMA CITY, OKLAHOMA
**SHERMAN, TEXAS 75090**

CITATION

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney
do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next
following the expiration of twenty days after you were served this citation and petition, a default judgment
may be taken against you.

**SYNDICATE 2003-SJC**

Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's PLAINTIFF'S
AMENDED PETITION at or before ten o'clock a.m. on the Monday after the expiration of twenty days
after the date of service of this citation before the Honorable 336th District Court of Grayson County,
Texas at the Justice Center of said County in Sherman Texas, said Plaintiff's Petition was filed in said
court on the 9th day of May, 2008 this case numbered 08-0604-336 on the docket of said court, and
styled:

**LAKE TEXOMA HIGHPORT, LLC, vs. CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON SUBSCRIBING TO INSURANCE AGREEMENT REPRESENTED BY POLICY
NUMBER PPL070356; HOUSTOUN, WOODWARD, EASON, GENTLE, TOMFORDE AND
ANDERSON, INC. D/B/A INSURANCE ALLIANCE**

The nature of the Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's
PLAINTIFF'S AMENDED PETITION  Petition accompanying this citation and make a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the
mandates thereof, and make due return as the law directs.

Issued and given under hand and seal of said court at Sherman, Texas, this the 28th day of May, 2008.

Attest: **Tracy Powers**
**District Clerk, Grayson County, Texas**

By: _____
Deputy

08-0604-336
SYNDICATE 2003-SJC

SHERIFF'S RETURN

Came to hand on _____ day of_____, 2007, at
_____ o'clock ____. And executed in _____
County, Texas by delivering to each of the within-named defendant(s), in
person, a true copy of this citation, having first endorsed thereon the date of delivery,
together with the accompanying true and correct copy of the Plaintiff's Petition, at
the following times and places, to-wit:

| NAME | Date Mth-Day-Yr | Time | Place, Course,  Dist from Court House |
|------|-----------------|------|--------------------------------------|
|      |                 |      |                                      |
|      |                 |      |                                      |
|      |                 |      |                                      |
|      |                 |      |                                      |

And not executed as to the defendant, _____the
diligence used in finding said defendant being _____and
the cause of failure to execute this process is:_____and
the information  received as to the whereabouts of the said defendant_____
_____.

Fees – Serving_____cop_____$_____
                              Total      $_____

_____,County, Texas
                            By:_____,Deputy

No.  08-0604-336

| | | |
|---|---|---|
| LAKE TEXOMA HIGHPORT, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | OF GRAYSON COUNTY, TEXAS |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S | § | |
| OF LONDON, SYNDICATE 1036, | § | |
| SYNDICATE 1183, SYNDICATE 1200, and | § | |
| SYNDICATE 2003, subscribing to the | § | |
| insurance agreement represented by policy | § | |
| number PPL070356; and HOUSTOUN, | § | |
| WOODWARD, EASON, GENTLE, | § | |
| TOMFORDE AND ANDERSON, INC. d/b/a | § | |
| INSURANCE ALLIANCE | § | |
| | § | |
| Defendants. | § | 336 JUDICIAL DISTRICT |

## PLAINTIFF'S AMENDED PETITION

Plaintiff, Lake Texoma Highport, LLC ("Plaintiff' or "Highport"), for its claims against Defendants, Certain Underwriters at Lloyd's of London, Syndicate 1036, Syndicate 1183, Syndicate 1200, and Syndicate 2003 ("Lloyd's"), subscribing to the insurance agreement represented by policy number PPL070356, and Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance, (collectively, "Defendants"), alleges and states as follows:

### A. Discovery Control Plan

1.      Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190 and affirmatively pleads that it seeks monetary relief aggregating more than $50,000.00.

### B. Parties

2.      Plaintiff is a Texas LLC doing business in the State of Texas.

FILED FOR RECORD

2008 MAY 19  PM 12: 01

DISTRICT CLERK
GRAYSON COUNTY

3.     Defendant, Lloyd's, is comprised of London, England business entities doing business in the State of Texas, which may be served with process through the Texas Commissioner of Insurance.

4.     Defendant, Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance ("Insurance Alliance") is a Texas business entity having its principal place of business in the State of Texas, and may be served with process through its registered agent.

## C. Jurisdiction and Venue

5.     Jurisdiction and venue are permissive in this county because this is the county in which all or a substantial part of the assets, events or omissions giving rise to the claim occurred.

## D. Factual Background

6.     Lloyd's of London is a market comprised of insurance syndicates in which underwriting members of Lloyd's (known as "Names" or "Syndicates") agree to indemnify their insureds, such as the Plaintiff in this case.

7.     Plaintiff owns a marina on the southern shore of Lake Texoma in Grayson County, Texas (the "Marina"). The Marina consists of land, a restaurant, a club, multiple docks, a bulkhead, and a long list of other property normally associated with marinas.

8.     In early 2005, and in early 2006, Plaintiff instructed Insurance Alliance, which was acting as its insurance agent, to locate a property insurance policy that would provide Plaintiff with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for loss of business ("Business Interruption"). Insurance Alliance represented to Plaintiff that the policy purchased by Plaintiff in the spring of 2005, and the policy purchased by Plaintiff in the spring of 2006, provided the requested blanket coverage.

9.     In early 2007, Plaintiff instructed Insurance Alliance to find a policy with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for Business Interruption. In response to Plaintiff's request, Insurance Alliance provided Plaintiff with, and Plaintiff purchased from Lloyd's a property insurance

agreement, represented by policy number PPL070356 (the "Policy"), which was to provide Plaintiff with blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to, the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, and Business Interruption.

10.     Insurance Alliance represented to Plaintiff that the Policy provided blanket coverage for all of Plaintiff's real and personal property associated with the Marina.

11.     Plaintiff paid premiums to Lloyd's for the Policy under the belief that the Policy provided blanket coverage.

12.     After purchasing the Policy, Plaintiff suffered significant damage to the Marina due to flooding from heavy rainfall occurring from May through July of 2007.

13.     Plaintiff retained Adjustors International ("AI") to assist it in adjusting the claim and documenting the losses sustained as a result of the flooding, and Lloyd's retained Charles Taylor Consulting ("CTC") to act as Lloyd's agent in connection with the adjustment of Plaintiff's claims.

14.     In August 2007, Plaintiff, AI, and CTC met numerous times to determine the most efficient and appropriate manner to evaluate Plaintiff's claims.  The parties agreed that AI would document and submit the amount of the claims to CTC, which would respond to the documented claims by either agreeing to the submitted amounts or providing items of disagreement to be reviewed and discussed by the parties.

15.     In October and November 2007, AI submitted estimates for the cost of repairing or replacing some of Plaintiff's wet and dry property that had been damaged by the flooding to CTC.  The total amount of the estimates submitted by AI was $8,391,598.48.  CTC agreed to review the estimates, list any disputed items, and meet with AI to discuss them.

16.     On December 4, 2007, representatives of CTC and AI met at Highport Marina. At this meeting, CTC failed to provide a list of any estimates submitted by AI with which CTC

either agreed or disputed.  CTC indicated, however, that there may be some issues regarding the coverage under the Policy.

17.     On December 4, 2007, AI submitted a sworn partial proof of loss on behalf of Plaintiff for $8,291,598.48 (the "Proof of Loss") for some of the damaged dry and wet property.

18.     By letter dated December 20, 2007, Chris Moss with CTC acknowledged receipt of the Proof of Loss but represented that Lloyd's could not make a decision "as to how much of this claim is covered until we have received all items, statements, and forms necessary to evaluate this matter", including (i) competitive bids for the repair work, (ii) expert reports, and (iii) a valuation survey showing the replacement value of the damaged property.  The Policy, however, does not require Plaintiff to provide any such documents, and Plaintiff notified CTC in a December 21, 2007 letter that if CTC or Lloyd's needs them, they are the "responsibility of the carrier or agent/adjustor for the carrier."

19.     Neither Lloyd's nor CTC has provided AI or Plaintiff with a list of the estimates submitted by AI with which it either agrees or disagrees.  In addition, until counsel for Plaintiff received an April 9, 2008 letter from Lloyd's counsel, neither Lloyd's nor CTC had provided AI or Plaintiff with its final coverage position in response to the Proof of Loss.

20.     The April 9, 2008 letter, however, sets forth Lloyd's coverage position (the "Coverage Letter"), and disputes that the Policy provides blanket coverage for all of Plaintiff's real and personal property associated with the Marina.  Specifically, Lloyd's takes the position that one of the schedules ("Underwriting Schedule") submitted as part of the underwriting for the Policy by Insurance Alliance ("Underwriting Submission") not only formed a part of the contract of insurance, but also limited coverage as follows: (i) the values on the Underwriting Schedule constitute sub-limits for each asset listed; (ii) only the assets listed on the Underwriting Schedule are insured; (iii) there is no Business Interruption for assets not identified on the Underwriting Schedule as being associated with business interruption; and (iv) a co-insurance penalty is calculated based on the individual values listed on the Underwriting Schedule.

21.     Thus, in an attempt to limit coverage, Lloyd's has indicated that because the Marina's bulkhead was not listed on Underwriting Schedule, it is not covered under the Policy even though the Docks & Piers Wording section of the Policy provides that the insured property includes "[f]loating and/or fixed piers, floating and/or fixed docks, [and] **bulkheads**" (emphasis added).  Plaintiff estimates that the current damage to the bulkhead exceeds $1,000,000.

22.     In connection with the dry property, Lloyd's has taken the position that the itemized values set forth on the Underwriting Schedule, instead of the $4,075,000 coverage amount for the dry property set forth in the schedule attached to the slip (the "Slip Schedule"), should be relied upon to determine the amount of the co-insurance penalty that might be due.  By taking this position, Lloyd's significantly reduces its liability under the Policy.

23.     Regarding Business Interruption coverage, Lloyd's relies upon the Underwriting Schedule to support its position that there is no coverage for any "dry" assets other than the Administration Building because the schedule does not associate a business interruption value with any "dry" asset except the Administration Building.  This interpretation is inconsistent with the coverage provided under the Business Interruption Wording Section of the contract of insurance and the Slip Schedule and significantly reduces Lloyd's liability under the Policy.

### E. Count 1 – Breach of Contract (Lloyd's)

24.     Paragraphs 1-23 above are incorporated herein.

25.     Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for, among other things, all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

26.     Lloyd's breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood and by failing to properly adjust Plaintiff's claims as required under the Policy.

27.     As a direct and proximate cause of Lloyds' actions, Plaintiff has been damaged in excess of $8,000,000.

## F.  Count II – Declaratory Judgment (Lloyd's)

28.    Paragraphs 1-27 above are incorporate herein.

29.    Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

30.    Lloyd's has taken the coverage position that it is not obligated to provide blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

31.    Plaintiff seeks a declaration from the Court that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance.

## G.  Count III – Breach of Contract (Insurance Alliance)

32.    Paragraphs 1-31 above are incorporated herein.

33.    Plaintiff and Insurance Alliance entered into a contract pursuant to which Insurance Alliance agreed to acquire for Plaintiff a property insurance policy that provided Plaintiff with $15,000,000 blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to,

the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, contents, equipment and loss of business income.

34.     If Lloyd's coverage position is correct, Insurance Alliance breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood.

35.     If Lloyd's coverage position is correct, as a direct and proximate cause of Insurance Alliance's actions, Plaintiff has suffered economic losses.

## H. Count IV – Negligence (Insurance Alliance)

36.     Paragraphs 1-35 above are incorporated herein.

37.     As Plaintiff's agent, Insurance Alliance owed a legal duty to Plaintiff to use ordinary care in obtaining property insurance coverage for Plaintiff.

38.     If Lloyd's coverage position is correct, Insurance Alliance breached its duty to Plaintiff by not using ordinary care in obtaining property insurance coverage for Plaintiff.

39.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent conduct, Plaintiff has suffered economic losses.

## I. Count V – Negligent Misrepresentation (Insurance Alliance)

40.     Paragraphs 1-39 above are incorporated herein.

41.     If Lloyd's coverage position is correct, while acting as Plaintiff's agent, Insurance Alliance made representations to Plaintiff regarding the Policy for Plaintiff's benefit that included false information.

42.     If Lloyd's coverage position is correct, Insurance Alliance did not exercise reasonable care or competence in obtaining or communicating the information in the representations.

43.     Plaintiff justifiably relied on the representations.

44.     If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent misrepresentations, Plaintiff has suffered economic losses.

## J. Count VI– Common-Law Fraud (Insurance Alliance)

45.     Paragraphs 1-44 above are incorporated herein.

7

46.    If Lloyd's coverage position is correct, as Plaintiff's agent, Insurance Alliance made material representations to Plaintiff which were false.

47.    When Insurance Alliance made the false representations, it did so recklessly, as positive assertions, and without knowledge of their truth.

48.    Insurance Alliance intended Plaintiff to act on its representations, and Plaintiff did in fact rely upon and act on the false representations.

49.    If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's fraudulent conduct, Plaintiff has suffered economic losses.

## I. Conditions Precedent

50.    All conditions precedent have been performed or have occurred.

## J. Jury Demand

51.    Plaintiff hereby requests a trial by jury.

## K. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Court enter (1) an order declaring that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance, and (2) a judgment against Defendants as follows:

A.    for damages in an amount to be proven at trial;

B.    for pre- and post-judgment;

C.    for costs and attorney fees; and

D.    for such further relief as Plaintiff is now or may become entitled in law or equity.


Respectfully submitted this _____ day of _____, 2008,

By: _____

Spencer F. Smith
Texas Bar No. 24008625
McAfee & Taft PC
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma
Telephone (405) 552-2334
Facsimile (405) 228-7334

ATTORNEYS FOR PLAINTIFF

9