# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| LAKE TEXOMA HIGHPORT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08cv285 |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S | § | |
| OF LONDON, ET AL. | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Lake Texoma Highport, LLC ("Plaintiff" or "Highport"), for its claims against Defendants, Certain Underwriters at Lloyd's of London, Syndicate 1036, Syndicate 1183, Syndicate 1200, and Syndicate 2003 ("Lloyd's"), subscribing to the insurance agreement represented by policy number PPL070356, and Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance; CRC Insurance Services, Inc.; and Bowood Partners Limited, (collectively, "Defendants"), alleges and states as follows:

### I.   JURISDICTION

1.  This Court has jurisdiction of this cause under 28 U.S.C.A. § 1331, because of diversity of citizenship.

### II.   PARTIES

2.  Plaintiff is a Texas LLC doing business in the State of Texas.

3.  Defendant, Lloyd's, is comprised of London, England business entities doing business in the State of Texas, which may be served with process through the Texas Commissioner of Insurance. Lloyds has already appeared and answered in this case.

4.  Defendant, Houstoun, Woodward, Eason, Gentle, Tomforde and Anderson, Inc. d/b/a Insurance Alliance ("Insurance Alliance") is a Texas business entity having its principal

place of business in the State of Texas, and may be served with process through its registered agent. Insurance Alliance has already answered and appeared in this action.

5. Defendant, CRC Insurance Services Inc. [acting individually and/or through its agent/affiliated entity/division – Southern Cross Underwriters (a/k/a Southern Cross Underwriters, Inc.] and d/b/a CRC of Texas, Inc. and/or CRC Insurance Services of Texas, Inc. (hereafter collectively referred to as "CRC") is an Alabama corporation doing business in Texas and may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul St., Dallas, Texas 75201. CRC has already appeared in this case in response to the Third-Party Complaint of Defendant Houstoun, Woodward, Eason, Gentle, Tomforde, and Anderson, Inc. dba Insurance Alliance.

6. Defendant Bowood Partners Limited (hereafter "Bowood") is a company incorporated in Great Britain and registered in England and Wales, Registration Number: 2569473. It is authorized and regulated by the Financial Services Authority and its registered office is at 33 Lombard Street, London EC3V 9BQ. Summons may be served pursuant to the terms of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, November 15, 1965, to: The Senior Master of the Royal Courts of Justice, Strand, London WC2A 2LL. Bowood has already appeared in this case in response to the Third-Party Complaint of Defendant Houstoun, Woodward, Eason, Gentle, Tomforde, and Anderson, Inc. dba Insurance Alliance.

### III. VENUE

7. Jurisdiction and venue are permissive in this county because this is the county in which all or a substantial part of the assets, events or omissions giving rise to the claim occurred.

### IV. FACTS

8. Lloyd's of London is a market comprised of insurance syndicates in which underwriting members of Lloyd's (known as "Names" or "Syndicates") agree to indemnify their insureds, such as the Plaintiff in this case.

9. Plaintiff owns a marina on the southern shore of Lake Texoma in Grayson County, Texas (the "Marina"). The Marina consists of land, a restaurant, a club, multiple docks, a bulkhead, and a long list of other property normally associated with marinas.

10. In early 2005, and in early 2006, Plaintiff instructed Insurance Alliance, which was acting as its insurance agent, to locate a property insurance policy that would provide Plaintiff with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for loss of business ("Business Interruption"). Insurance Alliance represented to Plaintiff that the policy purchased by Plaintiff in the spring of 2005, and the policy purchased by Plaintiff in the spring of 2006, provided the requested blanket coverage.

11. In early 2007, Plaintiff instructed Insurance Alliance to find a policy with blanket coverage for all of Plaintiff's real and personal property associated with the Marina, including insurance coverage for Business Interruption. In response to Plaintiff's request, Insurance Alliance provided Plaintiff with, and Plaintiff purchased from Lloyd's a property insurance agreement, represented by policy number PPL070356 (the "Policy"), which was to provide Plaintiff with blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to, the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, and Business Interruption.

12. Insurance Alliance represented to Plaintiff that the Policy provided blanket coverage for all of Plaintiff's real and personal property associated with the Marina.

13. Plaintiff paid premiums to Lloyd's for the Policy under the belief that the Policy provided blanket coverage.

14. After purchasing the Policy, Plaintiff suffered significant damage to the Marina due to flooding from heavy rainfall occurring from May through July of 2007.

15. Plaintiff retained Adjustors International ("AI") to assist it in adjusting the claim and documenting the losses sustained as a result of the flooding, and Lloyd's retained Charles

Taylor Consulting ("CTC") to act as Lloyd's agent in connection with the adjustment of Plaintiff's claims.

16. In August 2007, Plaintiff, AI, and CTC met numerous times to determine the most efficient and appropriate manner to evaluate Plaintiff's claims. The parties agreed that AI would document and submit the amount of the claims to CTC, which would respond to the documented claims by either agreeing to the submitted amounts or providing items of disagreement to be reviewed and discussed by the parties.

17. In October and November 2007, AI submitted estimates for the cost of repairing or replacing some of Plaintiff's wet and dry property that had been damaged by the flooding to CTC. The total amount of the estimates submitted by AI was $8,391,598.48. CTC agreed to review the estimates, list any disputed items, and meet with AI to discuss them.

18. On December 4, 2007, representatives of CTC and AI met at Highport Marina. At this meeting, CTC failed to provide a list of any estimates submitted by AI with which CTC either agreed or disputed. CTC indicated, however, that there may be some issues regarding the coverage under the Policy.

19. On December 4, 2007, AI submitted a sworn partial proof of loss on behalf of Plaintiff for $8,291,598.48 (the "Proof of Loss") for some of the damaged dry and wet property.

20. By letter dated December 20, 2007, Chris Moss with CTC acknowledged receipt of the Proof of Loss but represented that Lloyd's could not make a decision "as to how much of this claim is covered until we have received all items, statements, and forms necessary to evaluate this matter", including (i) competitive bids for the repair work, (ii) expert reports, and (iii) a valuation survey showing the replacement value of the damaged property. The Policy, however, does not require Plaintiff to provide any such documents, and Plaintiff notified CTC in a December 21, 2007 letter that if CTC or Lloyd's needs them, they are the "responsibility of the carrier or agent/adjustor for the carrier."

21. Neither Lloyd's nor CTC has provided AI or Plaintiff with a list of the estimates submitted by AI with which it either agrees or disagrees. In addition, until counsel for Plaintiff

received an April 9, 2008 letter from Lloyd's counsel, neither Lloyd's nor CTC had provided AI or Plaintiff with its final coverage position in response to the Proof of Loss.

22. The April 9, 2008 letter, however, sets forth Lloyd's coverage position (the "Coverage Letter"), and disputes that the Policy provides blanket coverage for all of Plaintiff's real and personal property associated with the Marina. Specifically, Lloyd's takes the position that one of the schedules ("Underwriting Schedule") submitted as part of the underwriting for the Policy by Insurance Alliance ("Underwriting Submission") not only formed a part of the contract of insurance, but also limited coverage as follows: (i) the values on the Underwriting Schedule constitute sub-limits for each asset listed; (ii) only the assets listed on the Underwriting Schedule are insured; (iii) there is no Business Interruption for assets not identified on the Underwriting Schedule as being associated with business interruption; and (iv) a co-insurance penalty is calculated based on the individual values listed on the Underwriting Schedule.

23. Thus, in an attempt to limit coverage, Lloyd's has indicated that because the Marina's bulkhead was not listed on Underwriting Schedule, it is not covered under the Policy even though the Docks & Piers Wording section of the Policy provides that the insured property includes "[f]loating and/or fixed piers, floating and/or fixed docks, [and] **bulkheads**" (emphasis added). Plaintiff estimates that the current damage to the bulkhead exceeds $1,000,000.

24. In connection with the dry property, Lloyd's has taken the position that the itemized values set forth on the Underwriting Schedule, instead of the $4,075,000 coverage amount for the dry property set forth in the schedule attached to the slip (the "Slip Schedule"), should be relied upon to determine the amount of the co-insurance penalty that might be due. By taking this position, Lloyd's significantly reduces its liability under the Policy.

25. Regarding Business Interruption coverage, Lloyd's relies upon the Underwriting Schedule to support its position that there is no coverage for any "dry" assets other than the Administration Building because the schedule does not associate a business interruption value with any "dry" asset except the Administration Building. This interpretation is inconsistent with

the coverage provided under the Business Interruption Wording Section of the contract of insurance and the Slip Schedule and significantly reduces Lloyd's liability under the Policy.

## V.   COUNTS PERTAINING TO LLOYDS

**A.   Count 1 – Breach of Contract (Lloyd's)**

26.   Paragraphs 1-25 above are incorporated herein.

27.   Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for, among other things, all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

28.   Lloyd's breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood and by failing to properly adjust Plaintiff's claims as required under the Policy.

29.   As a direct and proximate cause of Lloyds' actions, Plaintiff has been damaged in excess of $8,000,000.

**B.   Count II – Declaratory Judgment (Lloyd's)**

30.   Paragraphs 1-29 above are incorporate herein.

31.   Plaintiff and Lloyds entered into a contract whereby Plaintiff purchased from Lloyd's property insurance providing blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

32.   Lloyd's has taken the coverage position that it is not obligated to provide blanket coverage for all of Plaintiff's real and personal property associated with the Marina and all losses associated with Business Interruption of the Marina.

33.   Plaintiff seeks a declaration from the Court that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the

Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance.

C.   **Count III—Breach of the Duty of Good Faith and Fair Dealing (Lloyds)**

34.   Paragraphs 1-33 above are incorporated herein.

35.   Defendant Lloyds owed a common law duty of good faith and fair dealing to Plaintiffs.

36.   Defendant Lloyds has and continues to breach its duty to Plaintiff.

37.   This breach is a proximate cause of economic damages to Plaintiff.

38.   Further, Defendant Lloyd's has acted in a grossly negligent and/or with malice.

39.   Accordingly, Plaintiff is also entitled to recover punitive damages.

D.   **Count IV—Breach of Prompt Payment Statute (Lloyds)**

40.   Paragraphs 1-38 above are incorporated herein.

41.   Defendant Lloyds has been and continues to violate TEX. INS. CODE § 542.058.

42.   Plaintiff is therefore entitled to recover interest on the amount of the claim at a rate of 18% per annum, pursuant to TEX. INS. CODE 542.060(a), attorneys' fees, costs of suit.

E.   **Count V— Violations of the Unfair Settlement Practices Act (Lloyds)**

43.   Paragraphs 1-42 above are incorporated herein.

44.   Defendant Lloyd has violated § 541.051(1)(a), (b) of the Texas Insurance Code.

45.   Defendant Lloyd has violated §§ 541.060(1), (2), (3)-(4), (7) of the Texas Insurance Code, and these violations have been the producing cause of actual damages.

46.   Defendant Lloyd's violations, including knowing violations, of § 541.061 of the Texas Insurance Code have also been a producing cause of actual damages to Plaintiff:

Section 541.0061(1): making an untrue statement of material fact;

b. Section 541.0061(2): failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

c. Section 541.0061(3): making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

d. Section 541.0061(4): making a material misstatement of law; or

e. Section 541.0061(5): failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the code.

47. As a result of said violations, Plaintiff is entitled to recover actual damages, additional damages and/or attorneys' fees.

## VI. COUNTS PERTAINING TO AGENTS

### A. Counts Against Insurance Alliance

**(1) Count I – Breach of Contract (Insurance Alliance)**

48. Paragraphs 1-47 above are incorporated herein.

49. Plaintiff and Insurance Alliance entered into a contract pursuant to which Insurance Alliance agreed to acquire for Plaintiff a property insurance policy that provided Plaintiff with $15,000,000 blanket coverage from March 31, 2007, to March 31, 2008, for all of Plaintiff's real and personal property associated with the Marina, including, but not limited to, the piers, docks, bulkhead, restaurant, club, administrative and other buildings and property, contents, equipment and loss of business income.

50. If Lloyd's coverage position is correct, Insurance Alliance breached this contract by failing to provide Plaintiff with blanket coverage for the property damaged by the flood.

51. If Lloyd's coverage position is correct, as a direct and proximate cause of Insurance Alliance's actions, Plaintiff has suffered economic losses.

**(2) Count II– Negligence (Insurance Alliance)**

52. Paragraphs 1-51 above are incorporated herein.

53. As Plaintiff's agent, Insurance Alliance owed a legal duty to Plaintiff to use ordinary care in obtaining property insurance coverage for Plaintiff.

54. If Lloyd's coverage position is correct, Insurance Alliance, directly or vicariously through the acts of its agents and/or employees, breached its duty to Plaintiff by not using ordinary care in obtaining property insurance coverage for Plaintiff.

55. If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent conduct, Plaintiff has suffered economic losses.

**(3) Count III– Negligent Misrepresentation (Insurance Alliance)**

56. Paragraphs 1-55 above are incorporated herein.

57. If Lloyd's coverage position is correct, while acting as Plaintiff's agent, Insurance Alliance, directly or vicariously through the acts of its agents and/or employees, made representations to Plaintiff regarding the Policy for Plaintiff's benefit that included false information.

58. If Lloyd's coverage position is correct, Insurance Alliance did not exercise reasonable care or competence in obtaining or communicating the information in the representations.

59. Plaintiff justifiably relied on the representations.

60. If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's negligent misrepresentations, Plaintiff has suffered economic losses.

**(4) Count IV– Common-Law Fraud (Insurance Alliance)**

61. Paragraphs 1-60 above are incorporated herein.

62. If Lloyd's coverage position is correct, as Plaintiff's agent, Insurance Alliance made material representations to Plaintiff which were false.

63. When Insurance Alliance made the false representations, it did so recklessly, as positive assertions, and without knowledge of their truth.

64. Insurance Alliance intended Plaintiff to act on its representations, and Plaintiff did in fact rely upon and act on the false representations.

65. If Lloyd's coverage position is correct, as a proximate result of Insurance Alliance's fraudulent conduct, Plaintiff has suffered economic losses for which relief is sought.

**(5) Count IV—Violations of DTPA and Insurance Code (Insurance Alliance)**

66. Paragraphs 1-65 above are incorporated herein.

67. If Lloyd's coverage position is correct, Plaintiff is a consumer, under the Texas Deceptive Trade Practices Act ("DTPA") and Insurance Alliance has violated and is liable under §§ 17.46(b)(5), (7) and (23) of the DTPA; Insurance Alliance also violated and is liable under the Texas Insurance Code, §§ 541.051(1), 541.060(1) and 541.060(1)-(5); said violations were a producing and/or proximate cause of actual damages to plaintiff, and justify the award of attorneys fees.

68. Plaintiff would further submit that the alleged violations were committed knowingly, thus entitling Plaintiff to recover additional and/or treble damages.

**B. Counts Against CRC and Bowood**

**(1) Count I – Breach of Contract (CRC and Bowood)**

69. Paragraphs 1-68 above are incorporated herein.

70. Insurance Alliance has brought suit in a third-party action alternatively alleging that if Lloyd's position is correct, then CRC and Bowood are liable to Plaintiff for all or part of their damages and that they breached their duty of care to Plaintiff and Alliance by failing to use ordinary care in procuring the insurance, if they were in fact responsible for doing so, making misrepresentations regarding the insurance procures, failing to notify Plaintiff of the failure, if any, to procure the requested coverages, and obtaining and ascertaining that the policy procured was what was requested by Plaintiffs and from Lloyds.

71. Alternatively, if Lloyds' coverage position and/or the position of Insurance Alliance is correct, then Plaintiff had a contractual relationship and/or was a third-party beneficiary of any such relationship based on express of implied agreements among Insurance

Alliance, CRC and/or Bowood; further, CRC and/or Bowood violated an express or implied contractual obligation to provide Plaintiff with blanket coverage for the property damaged by the flood.

72. If Lloyds' coverage position and/or the position of Insurance Alliance is correct, as a direct and/or proximate cause of CRC and/or Bowood's actions, Plaintiff has suffered economic losses for which relief is sought.

**(2) Count II Negligent Misrepresentation and/or Breach of Warranty (CRC and Bowood)**

73. Paragraphs 1-72 above are incorporated herein.

74. If Lloyds' coverage position and/or the position of Insurance Alliance is correct, CRC and/or Bowood, directly or vicariously through the acts of their agents and/or employees, made representations that included false information and breached express and implied warranties to Plaintiff regarding the Policy for Plaintiff's benefit.

75. If Lloyds' coverage position and/or the position of Insurance Alliance is correct, CRC and/or Bowood did not exercise reasonable care or competence in obtaining or communicating the information in the representations.

76. Plaintiff justifiably relied on the representations.

77. If Lloyds' coverage position and/or the position of Insurance Alliance is correct, as a proximate and/or producing cause of CRC and/or Bowood's negligent misrepresentations and/or breach of warranty, Plaintiff has suffered economic losses for which relief is sought.

**(3) Count III– Common-Law Fraud**

78. Paragraphs 1-77 above are incorporated herein.

79. If Lloyds' coverage position and/or the position of Insurance Alliance are correct, CRC and/or Bowood made material representations to Plaintiff which were false.

80. When CRC and/or Bowood made the false representations, they did so recklessly, as positive assertions, and without knowledge of their truth.

81. CRC and/or Bowood intended Plaintiff to act on its representations, and Plaintiff did in fact rely upon and act on the false representations.

82. CRC and/or Bowood intended Plaintiff to act on its representations, and Plaintiff did in fact rely upon and act on the false representations.

83. If Lloyds' coverage position and/or the position of Insurance Alliance is correct, as a proximate result of CRC and/or Bowood's fraudulent conduct, Plaintiff has suffered economic losses for which relief is sought.

**(4) Count IV—Violations of the DTPA and Texas Insurance Code**

84. Paragraphs 1-83 above are incorporated herein.

85. If Lloyds' coverage position and/or the position of Insurance Alliance is correct, Plaintiff is a consumer under the Texas Deceptive Trade Practices Act ("DTPA") and CRC and/or Bowood have violated, knowingly and otherwise, §§ 17.46(b)(5), (7) and (23) of the DTPA; CRC and/or Bowood have also violated the Texas Insurance Code, §§ 541.051(1), 541.060(1) and 541.060(1)-(5); said violations were a producing and/or proximate cause of actual damages to plaintiff, and justify the award of attorneys fees.

86. Plaintiff would further submit that the alleged violations were committed knowingly, thus entitling Plaintiff to recover additional and/or treble damages.

**VII. Conditions Precedent**

80. All conditions precedent have been performed or have occurred.

**VIII. Jury Demand**

81. Plaintiff hereby requests a trial by jury.

**IX. Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests this Court enter (1) an order declaring that: (i) Lloyd's is obligated to provide $15,000,000 in blanket coverage for physical loss or damage to any of Highport's marine structures, dry property, equipment, contents, business interruption, and extra expenses in accordance with the exposure levels set forth in the Slip Schedule; (ii) the values on the Underwriting Schedule do not constitute sub-limits for each asset listed; (iii) there

is no co-insurance penalty unless the actual market value of Highport's damaged dry property exceeds $4,075,000; (iv) all of Highport's marine structures, dry property, equipment, and contents are insured even if not listed on the Underwriting Schedule; (v) there is Business Interruption coverage for all of Highport's assets up to a limit of $4,000,000 even if those assets are not identified as being associated with business interruption on the Underwriting Schedule; and (vi) the Underwriting Schedule does not limit coverage under the contract of insurance, and (2) a judgment against Defendants as follows:

> A. damages in an amount to be proven at trial;
>
> B. additional damages under the DTPA and/or the Texas Insurance Code;
>
> C. punitive damages;
>
> B. pre- and post-judgment;
>
> C. costs and reasonable and necessary attorney fees; and
>
> D. such further relief as Plaintiff is now or may become entitled in law or equity.

Respectfully submitted this _____ day of _____, 2009,

>                                   */s/ Michael W. Huddleston*
>                                   _____
>                                   Michael W. Huddleston
>                                   State Bar No. 10148414
>                                   E-mail:  mhuddleston@shannongracey.com
>                                   Leo John Jordan
>                                   State Bar No. 11014700
>                                   E-mail:  ljordan@shannongracey.com
>                                   Sydney B. Hewlett
>                                   State Bar No. 00798257
>                                   E-mail: shewlett@shannongracey.com
>                                   SHANNON, GRACEY, RATLIFF
>                                     & MILLER, L.L.P.
>                                   500 N. Akard Street, Suite 2500
>                                   Dallas, Texas  75201
>                                   (214) 245-3090 – Telephone
>                                   (214) 245-3097 – Facsimile

              Spencer F. Smith [Lead Counsel]
              Texas Bar No. 24008625
              MCAFEE & TAFT, PC
              10th Floor, Two Leadership Square
              211 N. Robinson
              Oklahoma City, Oklahoma
              (405) 552-2334 – Telephone
              (405) 228-7334 – Facsimile

              ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

  The undersigned counsel hereby certifies that on the 3rd day of April, 2009, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

**Harold Kemler Watson**
Locke Lord Bissell & Liddell LLP Houston
600 Travis St
Suite 3400
Houston , TX 77002-3004

**Rick Lee Oldenettel**
Oldenettel & Associates, P.C.
1360 Post Oak Blvd
Suite 2350
Houston , TX 77056

**Ashley Ty Parrish**
Cantey & Hanger
3330 Harwood Center
1999 Bryan St
Dallas , TX 75201

**Paul Kenneth Nesbitt**
Kelly Sutter & Kendrick, PC
3050 Post Oak Blvd
Suite 200
Houston , TX 77056-6570

              */s/ Michael W. Huddleston*
              _____
              Michael W. Huddleston